1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10
                                    )   Civil No. 09-CV-2657-W(WVG)
11   ELIJAH BEN PASCHELKE,           )
                                    )
12                   Plaintiff,      )   REPORT AND RECOMMENDATION ON
                                    )   DEFENDANTS' MOTION TO DISMISS
13        v.                         )   FIRST AMENDED COMPLAINT
                                    )
14   ROBERT HERNANDEZ, et al.,       )   [Doc. No. 22]
                                    )
15                   Defendants.     )
     ───────────────────────────────)
16

17        Plaintiff, a California state prisoner proceeding *in propria*

18   *persona*, brings this civil rights suit under 28 U.S.C. Section 1983

19   claiming Defendants violated his Eighth and Fourteenth Amendment

20   rights.   Defendants have moved the Court to dismiss the First

21   Amended Complaint ("FAC") on the basis that Plaintiff failed to

22   exhaust administrative remedies prior to filing suit pursuant to 42

23   U.S.C. Section 1997e(a) and fails to state any claim for which

24   relief can be granted.   As explained below, the Court RECOMMENDS

25   that Defendants' Motion to Dismiss be GRANTED in part and DENIED in

26   part.

27

28

# I.  BACKGROUND

Plaintiff is currently incarcerated at the Federal Correc-
tional Institution, Victorville, in Adelanto, California.  In late
2007, Plaintiff was incarcerated at California's R. J. Donovan
Correctional Facility ("Donovan") as he served a 5-month term for a
state parole violation.  (FAC, Doc. No. 9 at 9.)[1/]  Plaintiff arrived
at Donovan with a pre-existing back injury that necessitated he use
a cane to walk.  (Id.)  At Donovan, the medical screening staff
ordered that Plaintiff be assigned to a bottom-tier cell, be allowed
to use a cane, and be able to wear a cervical collar.  (Id. at 10.)

Once Plaintiff arrived at his final housing unit, unnamed
Donovan "staff" told him that he would be housed in an upper-tier
cell because no bottom-tier cells were vacant.  (Id. at 11.)
However, he was told that he would receive the next available
bottom-tier cell, as those were assigned on a first come, first
served basis.  (Id.)  Plaintiff continued to request a bottom-tier
cell for the next two weeks.  (Id.)

On November 21, 2007, Plaintiff was walking escorted to his
cell, when his cane slipped in a puddle of water, and he fell down
a flight of stairs.  (Id. at 9, 11.)  This fall aggravated Plain-
tiff's back injury, confining him to a wheelchair for the next eight
months.  (Id. at 11.)  Plaintiff also believed he had suffered a
concussion because he began to suffer from debilitating headaches,
dizziness, nausea, and blurred and double vision.  (Id.)  Despite
being aware that he may have suffered from a concussion, medical

---

[1/]   All references to documents on the Court's docket are to the CM/ECF page
numbers, not the document's original pagination.

09CV2657

1  staff "chose" not to treat Plaintiff for the same.  On December 3,
2  2007, Plaintiff lost consciousness in his cell.  (Id. at 12.)

3      Plaintiff alleges that he filed a prison administrative
4  complaint and appealed to Sacramento[2] concerning the denial of his
5  bottom-tier cell, the slip-and-fall incident, and lack of treatment
6  for a concussion.  (Id. at 12-13.)

7      Plaintiff brings this suit against Warden Robert Hernandez,
8  Medical Staff Supervisor John Doe, and Corrections Officer John Doe.
9  He brings claims for violation of his Eighth Amendment right to be
10 free from cruel and unusual punishment and his Fourteenth Amendment
11 right to equal protection.  (Id. at 3.)

12         **II.  LEGAL STANDARD**

13     A motion to dismiss under Federal Rule of Civil Procedure
14 12(b)(6) tests the legal sufficiency of the claims asserted in a
15 complaint.  A complaint must include "a short and plain statement of
16 the claim showing that the pleader is entitled to relief." Fed. R.
17 Civ. P. 8(a)(2).  This short and plain statement must "give the
18 defendant fair notice of what the claim is and the grounds upon
19 which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
20 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to
21 dismiss does not need detailed factual allegations, a plaintiff's
22 obligation to provide the 'grounds' of his 'entitlement to relief'
23 requires more than labels and conclusions, and a formulaic recita-
24 tion of the elements of a cause of action will not do."  Id.
25 "[F]actual allegations must be enough to raise a right to relief
26 above the speculative level."  Id.

27

28 [2]  Plaintiff does not specify where he filed the appeal. Presumably he is
referring to the Director of the California Department of Corrections ("CDC"), who
is located in Sacramento.

3

1    In considering a motion under Rule 12(b)(6), a court must
2    accept as true all material allegations in the complaint, as well as
3    all reasonable inferences to be drawn from them. <u>Pareto v.</u>
4    <u>F.D.I.C.</u>, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be
5    read in the light most favorable to the nonmoving party. <u>Sprewell</u>
6    <u>v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001); <u>Parks</u>
7    <u>Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995).

8    Dismissal pursuant to Rule 12(b)(6) is proper only where
9    there is either a "lack of a cognizable legal theory or the absence
10   of sufficient facts alleged under a cognizable legal theory."
11   <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
12   1990).

13   A *pro se* complaint must be held to less stringent standards
14   than formal pleadings drafted by lawyers and can only be dismissed
15   for failure to state a claim if "it appears beyond a doubt that the
16   plaintiff can prove no set of facts in support of his claim which
17   would entitle him to relief." <u>Haines v. Kerner</u>, 404 U.S. 519, 520
18   (1972) (internal quotations and citation omitted).

19   While a court must look to the pleadings on a Rule 12(b)(6)
20   motion, the court may look beyond the pleadings on nonenumerated
21   Rule 12(b) motions for failure to exhaust administrative remedies
22   where the defendant has the burden of proof. <u>Wyatt v. Terhune</u>, 315
23   F.3d 1108, 1119-20 (9th Cir. 2003). In such cases, the court
24   permits consideration of affidavits submitted by the parties in
25   support of or opposition to such a motion. <u>Ritza v. Int'l Long-</u>
26   <u>shoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir.
27   1988).

28

09CV2657

1

### III.  DISCUSSION

2          Defendants move to dismiss the FAC on the basis that (1)

3    Plaintiff  failed  to  exhaust  his  administrative  remedies,  (2)

4    Plaintiff failed to state a claim for which relief can be granted,

5    and (3) Plaintiff's allegations fail to allege cognizable claims

6    against Warden Hernandez and Medical Staff Supervisor John Doe in

7    their supervisory capacities.

8    **A.      Plaintiff Failed to Exhaust Administrative Remedies**

9          Plaintiff generally alleges that he exhausted his administra-

10   tive remedies by filing an appeal to Sacramento.  (FAC, Doc. No 9 at

11   11-12).    However, Defendants aver that they have searched their

12   records and none relating to any such appeal exists for any stage of

13   the appeal process.   Defendants include several declarations from

14   persons who conducted the records search.  (Motion, Doc. No. 22,

15   Exhs. 1-4.)

16         Under the Prison Reform Litigation Act, inmates may not bring

17   civil rights suits under Section 1983 "until such administrative

18   remedies as are available are exhausted."   42 U.S.C. § 1997e(a).

19   There  are  multiple  levels  in  the  California  prison  system's

20   grievance process:   (1) informal resolution, (2) formal written

21   appeal on a CDC 602 inmate appeal form, (3) second level appeal to

22   the institution head or designee, and (4) a third, final appeal to

23   the Director of the CDC.  Woodford v. Ngo, 548 U.S. 81, 85-86, 103

24   (2006); Wyatt, 315 F.3d at 1119.  Failure to exhaust is an affirma-

25   tive defense that must be raised and proven, but does not have to be

26   specifically pled in the operative complaint.  Jones v. Bock, 549

27   U.S. 199, 216-17 (2007).

28

09CV2657

1     An affirmative defense for failure to exhaust can be raised
2  through a nonenumerated Rule 12(b) motion and may rely on evidence
3  outside the record.   See Brown v. Valoff, 422 F.3d 926, 939 n.13
4  (9th Cir. 2005).   Because prison officials are likely to have
5  superior access to prison administrative records, Defendants have
6  the burden of raising and proving the absence of exhaustion defense.
7  Wyatt, 315 F.3d at 1124-25.   Once Defendants meet their burden of
8  demonstrating the absence of evidence that exhaustion occurred, the
9  burden shifts to Plaintiff to produce evidence that demonstrates
10 either exhaustion or circumstance excusing exhaustion.   See Sapp v.
11 Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010); Nunez v. Duncan, 591
12 F.3d 1217, 1224 (9th Cir. 2010).   If the court finds that the
13 prisoner has failed to exhaust non-judicial remedies, the proper
14 remedy is dismissal of the claim without prejudice.   Wyatt, 315 F.3d
15 at 1120.

16     In Wyatt, the Ninth Circuit cautioned that when a court looks
17 beyond the pleadings and decides disputed issues of fact, a *pro se*
18 prisoner litigant must be provided fair notice of the significance
19 of the procedure, the prisoner's means of refuting any factual
20 contentions at issue, and the consequences of his failure to do so.
21 Id. at 1114, 1120 n.14.

22     Here, Plaintiff alleges he lodged an administrative complaint
23 and appeal concerning the November 21, 2007, slip-and-fall incident,
24 lack of medical care for a concussion, and Defendants' failure to
25 provide a bottom-tier cell to accommodate his medical needs.   He
26 claims he filed a complaint at the prison and mailed an appeal to
27 Sacramento.

28

1    The Court provided Plaintiff notice by way of an order dated

2  March 16, 2011, informing him that Defendants filed a motion for

3  dismissal for failure to exhaust.  In its order, the Court provided

4  instructions on what additional information Plaintiff must provide

5  to survive dismissal for want of exhaustion.  (Doc. No. 23.)

6  However, Plaintiff's response to the Motion to Dismiss offered

7  identical statements as contained in the FAC with no additional

8  support opposing the Motion to Dismiss.

9    Assuming Plaintiff had filed an appeal with the CDC Director,

10  the question remains whether each level of the appeal process had

11  been exhausted prior to filing this suit.  Defendants have attached

12  to their Motion to Dismiss four sworn affidavits from various

13  officials with documentation[3] supporting that not one complaint or

14  appeal had been lodged by Plaintiff concerning the allegations

15  against Defendants.  See Thornhill Publ'g Co. v. Gen. Tel. & Elecs.

16  Corp., 594 F.2d 730, 733 (9th Cir. 1979) ("[N]o presumptive

17  truthfulness attaches, and the existence of disputed material facts

18  will not preclude the trial court from evaluating for itself the

19  merits of jurisdictional claims.").  The Court may consider attached

20  affidavits on nonenumerated Rule 12(b) motions to dismiss for

21  failure to exhaust administrative remedies.  Wyatt, 315 F.3d at

22  1120.  Because Defendants have shown that Plaintiff failed to

23  exhaust all administrative remedies afforded prisoners in the

24  California penal system prior to filing a Section 1983 suit, the

25  appropriate remedy is to dismiss the complaint without prejudice.

26

27

28

_____

[3]/   See Doc. No. 22, Exh. 3 (Declaration of R. Cobb in Support of Defendant's
Motion to Dismiss Plaintiff's FAC); Id., Exh. 4 (Declaration of D. Foston in
Support of Defendant's Motion to Dismiss Plaintiff's FAC).

09CV2657

1   Therefore, the Court RECOMMENDS that Defendants' Motion to Dismiss

2   be granted in this regard.

3   **B.      Failure to State an Eighth Amendment Claim**

4           In the event the FAC is not dismissed for failure to exhaust,

5   Plaintiff sufficiently pleads an Eighth Amendment violation against

6   Warden Hernandez to survive a Motion to Dismiss.   Plaintiff's

7   assertion of an Eighth Amendment violation appears predicated on

8   alleged deliberate indifference to his serious medical needs.

9   Defendants argue that Plaintiff's injury emanated from an accident

10  that did not result from deliberate indifference of a prison

11  official.

12          Deliberate indifference to serious medical needs violates the

13  Eighth Amendment's proscription against cruel and unusual punish-

14  ment.   See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v.

15  Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

16  *grounds* by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

17  1997) (en banc).   A determination of "deliberate indifference"

18  involves an examination of two elements: the seriousness of a

19  prisoner's medical need and the nature of the defendant's response

20  to that need.   See McGuckin, 974 F.2d at 1059.   A "serious" medical

21  need exists if the failure to treat a prisoner's condition could

22  result in further significant injury or the "wanton infliction of

23  unnecessary pain."   Id.   Examples of serious medical needs include

24  "the existence of an injury that a reasonable doctor or patient

25  would find important and worthy of comment or treatment; the

26  presence of a medical condition that significantly affects an

27  individual's daily activities; or the existence of chronic and

28  substantial pain."   Id. at 1059-60.

1    A prison official is deliberately indifferent if he knows

2    that a prisoner faces a "substantial risk of serious harm and

3    disregards that risk by failing to take reasonable measures to abate

4    it." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  For example,

5    deliberate indifference may include a prison doctor's inadequate

6    response to a prisoner's medical needs, "prison doctors in their

7    response to the prisoner's needs or by prison guards in intention-

8    ally denying or delaying access to medical care or intentionally

9    interfering with the treatment once prescribed." Estelle, 429 U.S.

10   at 104-05.  "The requirement of deliberate indifference is less

11   stringent in cases involving a prisoner's medical need than in other

12   cases involving harm to incarcerated individuals because '[t]he

13   State's responsibility to provide inmates with medical care

14   ordinarily does not conflict with competing administrative con-

15   cerns.'" McGuckin, 974 F.2d at 1060.  Nonetheless, the indifference

16   to medical needs must be substantial; inadequate treatment due to

17   malpractice, or even negligence, does not amount to a constitutional

18   violation.  Estelle, 429 U.S. at 106; Toguchi v. Chung, 391 F.3d

19   1051, 1060 (9th Cir. 2004).  Disagreements over "matters for medical

20   judgment," such as whether additional tests or treatments are

21   required, are insufficient to establish a constitutional violation.

22   Estelle, 429 U.S. at 107.

23          **1.   Delay in Assignment to Bottom-Tier Cell**

24   Plaintiff alleges prison officials[4/] delayed his placement in

25   a lower-tier cell despite direct orders from prison medical staff.

26   As a direct result, he alleges he suffered a possible concussion

27   from falling down a flight of stairs, which manifested itself in the

28

---

[4/] He specifically names prison "staff" and Warden Hernandez.

9

09CV2657

1  form of "debilitation headaches, dizzynes [sic], nausia

2  [sic], . . . and blurred vision." (Doc. No. 9 at 11.)

3      Plaintiff has sufficiently alleged he had a serious medical

4  need. His pre-existing back injuries and prior fall in a correc-

5  tional facility were serious enough that the Donavan's medical staff

6  ordered that he be assigned to a bottom-tier cell to accommodate his

7  medical condition. The very fact of this accommodation evidences

8  that he had a serious medical need that a reasonable medical

9  professional would see fit to address because medical staff actually

10 addressed it.

11     Plaintiff also sufficiently pleads deliberate indifference

12 because the prison staff[5] knew about his pre-existing injuries and

13 about the fact that he had previously fallen while on an upper-level

14 tier in another facility. He alleges his fall and possible

15 concussion resulted from the delay of accommodations ordered by

16 prison medical staff based on this information. The logical

17 inference from his allegations is that he would not have fallen down

18 the stairs had he been assigned a bottom-tier cell. He alleges that

19 prison "staff" delayed his placement in the proper cell and Warden

20 Hernandez's first-come-first-served policy caused the delay.

21     Plaintiff's allegations amount to much more than mere

22 negligence, malpractice, or inadvertence. He alleges he was housed

23 on an upper-tier cell despite medical orders that he be housed in a

24 bottom-tier cell, that those medical orders were based on needs that

25 medical professionals sought fit to address, that he had fallen in

26 a similar manner at another institution, that the risk that he would

27 _____

28 [5]Plaintiff does not name which prison staff members denied his lower tier cell accommodation issued by Donovan's medical staff. However he states that he was denied the cell accommodations while housed in both building 16 and building 20. Plaintiff fell down the flight of stairs while housed in building 20. (FAC, Doc. No. 9, ¶ 6-8.)

09CV2657

1   fall again was high and foreseeable as a result, and that he indeed

2   fell and seriously injured himself as a result of the delay in

3   receiving his medically-ordered accommodation.   Plaintiff specifi-

4   cally faults this delay for his fall and injury, which suffices to

5   meet the "harmful delay" requirement.   See McGuckin v. Smith, 974

6   F.2d 1050, 1060 (9th Cir. 1992) ("[W]hen, as here, a claim alleges

7   'mere delay of surgery,' a prisoner can make 'no claim for deliber-

8   ate medical indifference unless the denial was harmful.'") (quoting

9   Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th

10   Cir. 1985) (per curiam)).

11       Moreover, a partial basis for Plaintiff receiving the bottom-

12   tier assignment order in the first place was his fall down a flight

13   of stairs in another correctional facility a short time before he

14   entered Donovan.   Plaintiff alleges he specifically explained this

15   to "staff", but does not identify with specificity any individual

16   staff member.   (Doc. No. 9 at 10, ¶ 8 [Plaintiff "presented his

17   lower bunk/lower tier chrono to staff and explained that the reason

18   [he] was in a cervical collar was because [he] had recently fallen

19   down a flight of stairs the previous month . . . ."]].   As a result,

20   "staff" was on notice that Plaintiff had a medical order for a

21   bottom-tier cell and had specific knowledge that Plaintiff had

22   recently fallen down stairs in another correctional facility.

23   Knowing this, "staff" could not assign Plaintiff to a bottom-tier

24   cell because of overcrowding and the resulting first-come-first-

25   served policy.   These allegations are sufficient to make out an

26   Eighth Amendment claim.

27       Defendants argue that they did not have the sufficient

28   culpable state of mind because the inmates were locked down 23 hours

09CV2657

1    per day, Plaintiff was escorted, and the fall essentially amounted

2    to a freak accident.   Nonetheless, based on Plaintiff's medical

3    condition and prior fall, the risk that he would fall during the one

4    hour he was out of his cell was high.   Moreover, the knowledge that

5    Plaintiff had fallen while in another institution placed them on

6    actual notice that he was acutely at risk of falling again, given

7    his then-current medical condition.   As it came to be, he indeed did

8    fall.

9         The foregoing notwithstanding, although Plaintiff has

10   sufficiently pled an Eighth Amendment violation here, he only names

11   "staff." While presumably "staff" refers to Correctional Officer

12   Doe, Plaintiff still has not named an actual person against whom

13   this claim is directed, despite two prior warnings that he needs to

14   do so.   (See Doc. Nos. 3 at 7; 19 at 3.)   As a result, the Court

15   RECOMMENDS that this claim be dismissed against Correctional Officer

16   Doe and any unnamed defendants.   See Flowers v. Ahern, 650 F. Supp.

17   2d 988, 993 (N.D. Cal. 2009) (dismissing claims against unnamed

18   defendants).[6/]

19        **2.   Failure to Treat Concussion**

20        Plaintiff also bases his Eighth Amendment claim on the

21   failure to treat the purported concussion he suffered from his fall.

22   He alleges that unnamed prison staff "chose" not to treat him.   As

23   a result, he alleges he lost consciousness while urinating and awoke

24   on the floor in his cell.

25        Plaintiff has again alleged he had a serious medical need.

26   The possible concussion symptoms are serious enough that a reason-

27

28

---

[6/] Warden Hernandez's supervisory liability will be addressed below. The Court recommends that Warden Hernandez not be dismissed on the basis that he was merely a supervisor.

12

1    able medical professional would have at least evaluated Plaintiff
2    after he complained.

3          Moreover, Plaintiff's allegation that medical staff "chose"
4    not to treat him, read liberally, sufficiently pleads deliberate
5    indifference because a reasonable medical professional would not
6    choose to ignore the symptoms Plaintiff described.

7          However, Plaintiff has not pled specifically <u>who</u> "chose" not
8    to treat his possible concussion.  He merely states that unnamed
9    "medical staff" did so.  (Doc. No. 9 at 11-12, ¶ 13.)  As a result,
10   in the event the case is not dismissed for lack of exhaustion, this
11   portion of Plaintiff's Eighth Amendment claim should be dismissed as
12   well.  <u>See</u> <u>Flowers v. Ahern</u>, 650 F. Supp. 2d 988, 993 (N.D. Cal.
13   2009) (dismissing claims against unnamed defendants).

14   **C.    <u>Plaintiff Fails to Make Out An Equal Protection Claim</u>**

15         The Equal Protection Clause of the Fourteenth Amendment
16   requires that all similarly situated persons be treated alike.  <u>City</u>
17   <u>of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).
18   A plaintiff may establish an equal protection claim by showing that
19   he was intentionally discriminated against on the basis of his
20   membership in a protected class, <u>Thornton v. City of St. Helens</u>, 425
21   F.3d 1158, 1166 (9th Cir. 2005), or by showing that similarly
22   situated individuals were intentionally treated differently for no
23   rational basis, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564
24   (2000).

25         Here, Plaintiff does not allege that he was treated differ-
26   ently than other similarly situated inmates or that he is a member
27   of a protected class.  As a result, he fails to state a cognizable
28   equal protection claim.  <u>See</u> <u>Byrd v. Maricopa County Sheriff's</u>

09CV2657

1   <u>Dep't</u>, 565 F.3d 1205, 1212 (9th Cir. 2009) (to pursue an equal

2   protection claim, a plaintiff must "allege facts that are at least

3   susceptible of an inference of discriminatory intent) (citation

4   omitted).   Therefore, the Court RECOMMENDS that Defendant's Motion

5   to Dismiss in this regard be granted.

6   **D.      Supervisor Liability**

7          It appears that Plaintiff seeks to impose liability on Warden

8   Hernandez and Medical Staff Supervisor John Doe based on their roles

9   as supervisors.   However, because Plaintiff sufficiently pleads that

10  Warden Hernandez's policies led to the delayed medical accommoda-

11  tions and the resulting injury, the Court RECOMMENDS that only

12  Medical Staff Supervisor John Doe be dismissed from this case.

13         Supervisors are only personally liable for damages under

14  Section 1983 if they participated in, directed, or knew of the

15  alleged constitutional violations, and failed to intervene to

16  prevent them.   <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

17  However, "direct, personal participation is not necessary to

18  establish liability for a constitutional violation." <u>Kwai Fun Wong</u>

19  <u>v. U.S. INS</u>, 373 F.3d 952, 966 (9th Cir. 2004).  "Supervisors can be

20  held liable for the actions of their subordinates (1) for setting in

21  motion a series of acts by others, or knowingly refusing to

22  terminate a series of acts by others, which they knew or reasonably

23  should have known would cause others to inflict constitutional

24  injury; (2) for culpable action or inaction in training, supervi-

25  sion, or control of subordinates; (3) for acquiescence in the

26  constitutional deprivation by subordinates; or (4) for conduct that

27  shows a 'reckless or callous indifference to the rights of others.'"

28  <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 965 (9th Cir. 2009) (quoting

14

1  <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)),

2  *rev'd on other grounds*, 131 S. Ct. 2074.  "Any one of these bases

3  will suffice to establish the personal involvement of the defendant

4  in the constitutional violation."  <u>Id.</u>

5       To premise a supervisor's alleged liability on a policy

6  promulgated by the supervisor, the plaintiff must identify a

7  specific policy and establish a "direct causal link" between that

8  policy and the alleged constitutional deprivation.  <u>See, e.g.</u>, <u>City</u>

9  <u>of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Oviatt v.</u>

10 <u>Pearce</u>, 954 F.2d 1470, 1477-79 (9th Cir. 1992).

11      Here, Plaintiff alleges that Warden Hernandez established

12 policies, wrote regulations, or gave orders that led to Plaintiff's

13 injury.  (Doc. No. 9 at 15-16, ¶¶ 29-30.)  The FAC is certainly

14 inartfully pled.  However, reading it liberally and in Plaintiff's

15 favor, he essentially alleges that the Warden's first-come-first-

16 served policy in response to overcrowding led to Plaintiff's injury,

17 and that this injury could have been prevented had a policy existed

18 that required officers to find a bottom-tier cell for an inmate who

19 required one even if that inmate did not arrive first.  This is a

20 reasonable interpretation of Plaintiff's allegations and is

21 sufficient to impute personal participation to Warden Hernandez.  In

22 this regard, Plaintiff's theory of liability against Warden

23 Hernandez is that his policy set in motion a series of events that

24 led to Plaintiff's eventual injury.  <u>See, e.g.</u>, <u>Redman v. County of</u>

25 <u>San Diego</u>, 942 F.2d 1435, 1446-48 (9th Cir. 1991) (en banc)

26 (concluding that knowledge of a policy in response to overcrowding

27 that allegedly resulted in inmate's rape could be sufficient to

28 establish liability).

09CV2657

1    One tangential factor that the Court may consider is whether

2    necessity of the first-come-first-served policy to address over-

3    crowding issues impacts Plaintiff's claims.  A policy response to

4    overcrowding that leads to a constitutional violation (*e.g.*, a delay

5    in receiving ordered medical accommodations) does not excuse the

6    violation.   See Brown v. Plata, 131 S. Ct. 1910, 1933-34 (2011)

7    (discussing overcrowding in the context of, *inter alia*, delayed

8    medical care); Redman v. County of San Diego, 942 F.2d 1435, 1447-48

9    (9th Cir. 1991); Thomas v. Schwarzenegger, 2011 U.S. Dist. LEXIS

10   110067, *5-*8 (E.D. Cal. Sept. 27, 2011) (discussing overcrowding;

11   rejecting qualified immunity argument and finding a triable issue of

12   fact exists); Dillingham v. Schofield, 2011 U.S. Dist. LEXIS 93187,

13   *21-*22 (E.D. Tenn. Aug. 19, 2011) ("If overcrowded conditions cause

14   an inmate to be denied the minimal civilized measure of life's basic

15   needs, such as food, warmth, or exercise, this would transgress the

16   Eighth Amendment.")

17   In Redman, an inmate was raped because the jail was over-

18   crowded and the offending inmate could not be confined or separated

19   from other inmates as a result.  The Ninth Circuit held that Sheriff

20   Jim Duffy could be held liable:

21       [T]here is evidence in the record of both overcrowding and
         Sheriff Duffy's ultimate direction of operations at the
22       South Bay Detention Facility.  If we draw all inferences
         in favor of Redman, we find that a reasonable jury could
23       find Sheriff Duffy was deliberately indifferent to
         Redman's personal security rights by allowing overcrowding
24       of the South Bay Detention Facility.  Moreover, a jury
         could find that Sheriff Duffy knew or reasonably should
25       have known of the overcrowding at a facility under his
         administration and that he acquiesced in a deficient
26       policy that was a moving force behind Redman's rape and
         that repudiated Redman's constitutional right to personal
27       security.  A jury could likewise infer, based on Captain
         Beall's testimony, that Sheriff Duffy approved the
28       classification policies in effect at the facility.

09CV2657

1  <u>Id.</u> at 1447-48.  As in <u>Redman</u>, overcrowding does not excuse Warden
2  Hernandez's first-come-first-served policy when that policy led to
3  the delay of medical accommodations that the prison itself ordered.
4  In this instance, the policy led to the delay of Plaintiff's medical
5  accommodations even despite the knowledge that Plaintiff had
6  recently fallen down a flight of stairs and was particularly prone
7  to falling again.  At this stage of the proceedings, Plaintiff has
8  made out sufficient allegations against Warden Hernandez to survive
9  dismissal.

10       However, unlike with Warden Hernandez, Plaintiff has not
11  alleged that Medical Supervisor John Doe set forth any policies that
12  led to the delay and the resulting injuries.  Plaintiff has not
13  alleged any other facts against John Doe that could support his
14  liability as a supervisor.  As a result, the Court RECOMMENDS that
15  the FAC be dismissed against Medical Supervisor John Doe only.

16                        **IV.   <u>CONCLUSION</u>**

17       Based on the foregoing, the Court RECOMMENDS that Defendants'
18  Motion to Dismiss be granted on the basis that Plaintiff failed to
19  exhaust his administrative remedies.

20       Alternatively, in the event the FAC is not dismissed on this
21  basis, the Court RECOMMENDS that the Motion be:
22  1.   Denied in part as to the Eighth Amendment claim against Warden
23  Hernandez;
24  2.   Granted in part as to the Eighth Amendment claim against
25  Correctional Officer John Doe;
26  3.   Granted in part as to the Fourteenth Amendment claim in its
27  entirety;
28

09CV2657

1   4.   Granted in part as to Medical Supervisor John Doe's supervisor

2   liability; and

3   5.   Denied in part as to Warden Hernandez's supervisory liability.

4         IT IS ORDERED that no later than <u>November 28, 2011</u>, any party

5   to this action may file written objections with the Court and serve

6   a copy on all parties.   The document should be captioned "Objections

7   to Report and Recommendation."

8         IT IS FURTHER ORDERED that any reply to the objections shall

9   be filed with the Court and served on all parties no later than

10  <u>December 16, 2011</u>.   The parties are advised that failure to file

11  objections within the specified time may waive the right to raise

12  those objections on appeal of the Court's order.   <u>Martinez v. Ylst</u>,

13  951 F.2d 1153, 1156 (9th Cir. 1991).

14

15  DATED:   October 28, 2011

16

17                              _____
                                Hon. William V. Gallo
18                              U.S. Magistrate Judge

19

20

21

22

23

24

25

26

27

28

09CV2657